*1282 OPINION.
Teussell:
Issues 1, £ and J. — It appears from the record that in making its income-tax returns for the years here under review the petitioner claimed invested capital on account of good will and other intangibles in the amount of $775,900, which is 25 per cent of the outstanding capital stock on March 3, 1917. The Commissioner has made no allowance for invested capital on account of intangibles. An examination of the business of the petitioner as disclosed by the record shows that the three predecessor companies earned a generous return during a year prior to the consolidation and that for the six years immediately following the consolidation large profits were produced as set forth in the findings of fact, and for the taxable year 1919.the Commissioner found, as shown by his deficiency letter, that the petitioner had accumulated a surplus of more than a million and a half dollars. All of this indicates that upon organization the petitioner acquired a business capable of producing large profits and that such business has enjoyed a continuous period of prosperity from the time of its organization to the years under review and leads to the conclusion that the petitioner’s claim that it acquired a valuable intangible asset for which it issued its stock requires.a thorough investigation as to what may have been the cash value of such intangibles. In other cases we have for the purpose of ascertaining the value of intangibles made comparisons between earnings and capital invested in tangible assets. Otis Steel Co., 6 B. T. A. 358; *1283 Pennsylvania Central Brewing Co., 9 B. T. A. 264; Corning Glass Works, 9 B. T. A. 771. We have also given consideration to the selling values of the stock of corporations claiming to have acquired good will and other intangibles. Schulz Baking Co., 3 B. T. A. 470.
In the instant case a comparison of earnings both before and following the consolidation and the application of generally accepted formulae for capitalizing such earnings in excess of a reasonable return upon the investment in intangible assets point to the conclusion that the intangibles in the instant case had a considerable earning value and therefore a resulting capital value. During the first four years of petitioner’s life its average earnings for years of 12 months were approximately $186,000. During this time there was outstanding common stock in the amount of $3,000,000 and preferred 8 per cent stock of slightly less than $1,000,000. Therefore, if 8 per cent were paid upon the preferred stock outstanding, a little more than $100,000 of average earnings for the four-year period was applicable to earnings of the common stock, whii .h would mean an earning of a little more than three dollars per. share of the common stock.
In 1905' one of the stockholders exchanged 5,224 shares of common stock for $200,000 of the newly authorized issue of preferred stock and at the same time agreed to resell the preferred stock to the petitioner at $75 per share and accrued dividends. This indicates that in 1905 this stockholder placed a value of $75 per share upon petitioner’s preferred stock and about $28.70 per share upon the common stock. Between the time when the common stock was issued and the date of this exchange petitioner had accumulated surplus applicable to dividends upon common stock equivalent to about $13.66 per share. Subtracting this from the $28.70 valuation then placed upon the common stock indicates a value of about $15 per share at the date of organization.
Taking into consideration the earnings of the predecessor companies and the average earnings of the petitioner for the first four years of its existence and comparing the same with the indicated stock values resulting from the exchange above referred to and all the circumstances and data contained in the record pertaining to the organization and business of the petitioner, we have arrived at the conclusion that upon organization the petitioner acquired intangible assets of a cash value of $350,000 and that the same should be included in invested capital for the years here under review, subject to statutory limitations.
Concerning the claim of the petitioner for further intangible values acquired in respect to the Maas Engraving Co., it appears that this account was acquired at date of organization. We have, however, found it necessary to value intangibles upon the basis of business *1284 conditions during the four years following organization and having used that method of valuing intangibles the value so found must include any intangible values resulting from the Maas Engraving-transaction.
The books of the petitioner show a charge to expense for the year ending January 31, 1906, of $2,254.09 designated “Good Will of Gibson Calendar Company,” and also a charge to expense of $5,026.57, called “ Investment Gibson Calendar Company.” The petitioner desires to restore the $2,254.09 to capital as representing good will purchased with cash. It appears from the record that prior to January 31, 1906, the Gibson Calendar Co. went completely out of business. The write-off on the books of this amount would indicate that whatever good will had existed was lost at that time. Since no showing has been made to the contrary we must hold that the write-off was justified.
The petitioner claims that the $13,940.35 which represented the 25 per cent commission on good business paid to the vendors of the stock of the Thomas D. Murphy Co. represented a part of the cost of such stock and should be included as a part of invested capital. We have examined the contract of sale and are of the opinion that the $13,940.35 was not a part of the purchase price of the stock but was an additional business expense chargeable against the good business standing on the books of the Murphy Company. This expense would enter into cost of manufacture as directly as other items of expense incident to the obtaining and filling of orders, and accordingly was a proper deduction when incurred and not a capital item.
The petitioner deducted $8,841.78 as expense in the year ending January 31, 1906, representing the value of the building demolished on the land owned by the Thomas D. Murphy Co., a subsidiary, and now desires to restore such amount to capital as representing the value of land, on the assumption that the entire payment of $15,000 was for the land. We are unable to find any legal basis for the petitioner’s claim in th,is instance. Nothing has been introduced to show that the land and building in question changed hands. It was owned by the Thomas D. Murphy Co. both before and after the stock of that company was acquired by the petitioner. Consequently, the petitioner did not purchase the land and building. However, the Thomas D. Murphy Co. is entitled to restore to invested capital the $8,841.78 previously written off as a loss since no deductible loss was realized. By the removal of the building the company was enabled to put the land to better use and realize larger gains than it was able to do with the old building standing on the land. Arthur H. Ingle, 1 B. T. A. 595. Accordingly, the $8,841.78 should be added to the cost of the *1285 new bn,ilding and recovered by depreciation over the life of the new building.
The record establishes that the items making up the $3,113.49 are clearly costs incident to organization and should be restored to invested cápital.
The deficiencies should be recomputed in accordance with the foregoing fi.nd.ings of fact and opinion.
Reviewed by the Board.
Judgment wUl 5e entered on 15 days'1 notice, wider Bule 50.